UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AARON J. LINDH,

        Plaintiff,

        v.                                  Case No. 21-C-801

RANDALL HEPP[1], et al.,

        Defendants.

## SCREENING ORDER

Plaintiff Aaron J. Lindh, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights by moving him from a single to a double cell in retaliation for his repeated civil rights actions against correctional personnel. Lindh paid the civil case filing fee in full on July 9, 2021. This matter comes before the Court for screening of the complaint.

### FEDERAL SCREENING STANDARD

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure

---

[1] The Clerk is directed to correct the caption to reflect the correct spelling of Randall Hepp's name.

and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Lindh is an inmate at the Waupun Correctional Institution. Dkt. No. 1, ¶4. The defendants work at Waupun: Randall Hepp is warden; Falke is security director; Lt. Wodack is "movement officer;" Tonia Moon is an Inmate Complaint Examiner (ICE); and Lt. Burns, Sgt. Barrett, Sgt. Aronson, Sgt. Niebauer, CO Burkhardt, and Jane/John Does #1-3 are correctional staff. *Id.*, ¶5.

Burns is in charge of North Cell Hall (NCH), where Lindh was housed. Niebauer is a first shift sergeant responsible for cell assignments.

Lindh has been housed in a "single cell" in the North Cell Hall (NCH) since 1999. *Id.*, ¶¶8-12. In a memorandum dated March 25, 2021, Warden Hepp notified the Waupun staff and population that the Department of Corrections (DOC) had announced that the capacity of Waupun would be reduced by 225 beds. This would necessitate that one of the cell halls would be deactivated. It would also result in a decrease in the number of inmates who would be housed in single inmate cells. Recognizing that inmates who were moved from single to double cells or from the cell hall they preferred would feel it was unfair, Warden Hepp announced that single cell assignments would be determined on the basis of two objective criteria without preferential treatment based on other factors. The first consideration was to be medical, psychological, or security concerns. Once inmates needing single cell placements based on those considerations were made, priority would be given for remaining single cell assignments on the basis of seniority. Dkt. No. 1 at 8–9.

Lindh claims that on April 1, 2021, he was advised by Sergeants Burhardt and Correctional Officer (CO) Aaronson that he had been assigned a double cell, even though Lindh claims he has been at Waupun for decades and should be at the top of the single cell seniority list. Under the criteria listed by Warden Hepp, Lindh claims he was entitled to a single cell. Lindh alleges that Burhardt and Aaronson told him he was not on the list and either he move or he would go to segregation. Lindh moved to a double cell but claims the defendants denied him placement in a single cell in retaliation for his constitutionally protected activity, in particular, the multiple grievances and lawsuits he has filed against Waupun correctional officers and personnel. Lindh alleges he was placed in a single cell quarantine on May 25, 2021, prior to a previously scheduled

3

surgery, and was moved to a different single cell on June 7, 2021, a week after his surgery where he remained at the time he filed his suit. In other words, Lindh was in a double cell from April 1 to May 25, 2021.

Lindh alleges he sent two letters complaining of his cell assignment to Warden Hepp with copies for Security Director Falke and two grievances that were addressed by Inmate Complaint Examiner Tonia Moon. Falke initially responded that the cell assignments were made according to the criteria the Warden has identified in his memorandum and that there had been no retaliation. He responded to Lindh's second letter with instructions that he consult with Lieutenant Wodack, the Movement Officer, and copied his response to Wodack. Moon rejected both of Lindh's grievances, stating as to the first that inmate housing assignments were administrative decisions. She responded to Lindh's second grievance on June 22, 2021, telling him his complaint was resolved since he had by then been moved to a single cell.

Based on these allegations, Lindh claims the defendants violated his First Amendment rights by denying him a single inmate cell in retaliation for the complaints and lawsuits he filed against them and other Waupun personnel. He seeks declaratory and injunctive relief and damages.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Lindh seeks to proceed with a First Amendment retaliation claim against all of the defendants. Dkt. No. 1, ¶¶58-59. Lindh states that Moon

4

Case 1:21-cv-00801-WCG  Filed 08/06/21  Page 4 of 9  Document 4

initially resolved his "doubling-up" issue when it arose in 2019, but after he filed inmate complaints and federal lawsuits against her, she refused to get involved in 2021, purporting that it was a security issue that the ICE office will not intervene in. *Id*. Lindh states that Hepp and Falke refused to get involved in his "doubling-up" issue and instead directed him to Wodack. *Id*. And the remaining defendants were allegedly a part of a "conspiracy" to retaliate against him. *Id*.

To state a retaliation claim, Lindh must allege that (1) he engaged in a constitutionally protected activity; (2) he suffered a deprivation likely to prevent future protected activities; and (3) there was a causal connection between the two. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). The filing of inmate complaints or federal lawsuits is constitutionally protected activity. *See Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) (complaints); *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015) (federal lawsuits). Lindh must allege that the defendants had actual knowledge of his protected conduct and acted because of it. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (explaining that the official's retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive"). Lindh must also allege that the deprivations he suffered would likely deter a person of ordinary firmness from continuing to engage in protected activity. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

The Court will allow Lindh to proceed with a First Amendment retaliation claim, but only against Moon. Lindh alleges that Moon initially processed and reviewed his inmate complaints properly in 2019 and recommended moving him to a single cell, consistent with prison policy. After he filed inmate complaints and lawsuits against her, Moon began refusing to process and review his inmate complaints and she "rejected" them altogether claiming that cell assignments were a "security issue" in which the ICE office could not become involved. Lindh essentially

5

argues that Moon made the institution's grievance process completely unavailable to him in retaliation for his filing inmate complaints and federal lawsuits against her, and that could deter a person of ordinary firmness from continuing to utilize the grievance process to engage in constitutionally protected activity. At the pleading stage, these allegations are sufficient, but barely. Once Lindh was placed in a single cell, Moon properly dismissed his complaint since it was resolved at that point. This also means Lindh's claim for injunctive relief is moot and he has no right under the circumstances of this case to declaratory relief. What remains is a bare claim for damages based on the allegedly retaliatory denial of a single cell for less than two months.

The Court will dismiss the remaining defendants from this case. Lindh states that Hepp and Falke retaliated against him by directing him to Wodack to resolve the "doubling-up" issue instead of resolving the issue themselves. But there is nothing improper about doing that. "Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Lindh describes Wodack as the "movement officer" at the institution. Wodack, therefore, was the proper individual to resolve Lindh's issue regarding cell assignments. In any case, Hepp and Falke's conduct in this case, i.e., directing Lindh to the correct staff member to resolve an issue, also would not deter protected activity in the future. Indeed, Lindh was not punished for raising an issue nor was he prevented or stymied in his quest to raise and resolve the issue with the correct staff member. Based on Lindh's allegations, the Court cannot infer that Hepp and Falke directed Lindh's letter to Wodack for the purpose of retaliation.

Lindh also fails to state a conspiracy to retaliate claim against the remaining defendants. It's unclear what involvement Burns, Aronson, Burkhardt, and Jane/John Does #1-3 would have in cell assignments. Although Wodack and Niebauer were allegedly responsible for cell

6

assignments, there are no allegations that suggest how they would have known about the various inmate complaints and federal lawsuits that Lindh had filed given that none of these individuals were the subject of those inmate complaints and federal lawsuits. Toward that end, Lindh also does not allege that he told any of these individuals that he was filing, or would file, inmate complaints and federal lawsuits against them. The Court therefore cannot infer that these individuals took actions that constituted retaliation or a conspiracy to retaliate. Barrett was the subject one of Lindh's federal lawsuits, but Barrett was not the individual responsible for "doubling-up" Lindh's cell or transferring him to NWCH. In fact, Lindh does not allege any facts at all about what Barrett allegedly did in this case to violate his constitutional rights—Lindh only mentions that Barrett was an individual he had sued before. Based on Lindh's allegations, the Court cannot infer that Wodack, Burns, Barrett, Aronson, Niebauer, Burkhardt, and Jane/John Does #1-3 were engaged in a conspiracy to retaliate against him. The Court will dismiss these individuals from the case.

Finally, the Court notes that an inmate "has no constitutional right to be housed in a single cell or to be transferred to the prison of his choice." *Cordrey v. Harrington*, No. 14-CV-108-MJR, 2014 WL 716713, at *4 (S.D. Ill. Feb. 25, 2014); *see also Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) ("[A] prisoner does not have a constitutional right to a particular prison placement."). To the extent Lindh disagrees with how Wodack applied the March 25, 2021 memo regarding cell assignments, he does not have a constitutional claim. This is particularly true given that Lindh alleges a need for a single cell in NCH based on "seniority" status, rather than being in imminent danger of substantial harm or having a medical need that requires a single cell. An alleged violation of prison policy alone does not establish a constitutional violation. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020).

## CONCLUSION

The Court finds that the plaintiff may proceed with a First Amendment retaliation claim against Tonia Moon regarding her alleged refusal to properly process and review his inmate complaints following his successful lawsuit against her in February 2021.

**IT IS THEREFORE ORDERED** that Randall Hepp, Security Director Falke, Lt. Wodack, Lt. Burns, Sgt. Barrett, Sgt. Aronson, Sgt. Niebauer, CO Burkhardt, and Jane/John Does #1-3 are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Moon.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Moon shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Honorable William C. Griesbach
c/o Office of the Clerk
United States District Court
Eastern District of Wisconsin
125 S. Jefferson Street, Suite 102
Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 6th day of August, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge