AARON J. LINDH,

        Plaintiff,

    v.                                     Case No. 21-C-801

TONIA MOON,

        Defendant.

## DECISION AND ORDER

Plaintiff Aaron Lindh, who is serving a state prison sentence at Waupun Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that Defendant Tonia Moon retaliated against him by refusing to properly process and review his inmate complaints following his lawsuit against her in February 2021. On October 28, 2021, Moon moved for summary judgment on the ground that Lindh failed to exhaust the available administrative remedies in connection with his claim against her. Dkt. No. 11. The Court will grant Moon's motion.

## BACKGROUND

On March 25, 2021, Warden Hepp issued a memo announcing the capacity of Waupun Correctional Institution (WCI) would be reduced by 225 beds. This would necessitate that one of the cell halls would be deactivated and would result in a decrease in the number of inmates who could be housed in single inmate cells. Dkt. No. 1 at 8-9. Lindh alleges that on April 1, 2021, he learned he was assigned a double cell. *Id.* at 4. He believed that he should qualify for a single cell due to his seniority. *Id.* at 4-5. Lindh was only in a double cell from April 1 through May 25, 2021, at which point he was placed back in a single cell. Dkt. No. 25 at ¶1.

During the time Lindh was in a double cell, Lindh filed three inmate complaints regarding his cell assignment. Dkt. No. 25 at ¶¶1–2. The institution complaint examiner's office received the first of Lindh's complaints on April 5, 2021. *Id.* at ¶3. This complaint was given complaint number WCI-2021-5219. *Id.* In the first complaint, Lindh stated that his transfer from the NCH cell hall to the NWCH cell hall was done in retaliation because he has filed inmate complaints and a lawsuit against WCI staff members. Dkt. No. 14-2 at 8. For relief, Lindh asked to be returned to a single cell in the NCH, compensation, and the termination of staff involved. *Id.*

Institution Complaint Examiner (ICE) Moon rejected WCI-2021-5219 on April 5, 2021, pursuant to Wis. Admin. Code § DOC 310.10(6)(c), because it "lack[ed] merit or [was] otherwise frivolous." Dkt. No. 25 at ¶¶7–8. She elaborated, "An inmate's housing location is an administrative decision. Inmate's [sic] can be moved at any time. This office will not intervene on security issues regarding movement." *Id.* Lindh requested review of rejected complaint WCI-2021-5219. *Id.* at ¶9. Warden Hepp received Lindh's request on April 12, 2021. *Id.* Hepp affirmed the rejection on May 4, 2021, on the ground that the complaint lacked merit or was otherwise frivolous. *Id.*

The institution complaint examiner's office initially received the second complaint about being double celled on April 7, 2021. *Id.* at ¶4. This complaint was returned pursuant to Wis. Admin. Code §DOC 310.07(7) due to Lindh having filed more than one complaint that week. *Id.* Lindh resubmitted the second complaint the following week, which was received on April 12, 2021. It was given complaint number WCI-2021-5582 and was accepted and processed accordingly. *Id.* at ¶5. In his second complaint, Lindh complained that he should not have been placed in a cell with another person, and instead he should have been put in a single cell due to his seniority. Dkt. No. 14-3 at 8–9.

Moon rejected the second complaint, WCI-2021-5582, on May 6, 2021, pursuant to Wis. Admin. Code § DOC 310.10(6)(c), because it "lack[ed] merit or [was] otherwise frivolous." Dkt. No. 25 at ¶¶7–8. She elaborated, "An inmate's housing location is an administrative decision. Inmate's [sic] can be moved at any time. This office will not intervene on security issues regarding movement." *Id.* On May 13, 2021, Lindh requested review of rejected complaint WCI-2021-5582, stating that his placement in a double cell was done in retaliation because of his history of filing complaints and filing a lawsuit. Dkt. No. 14-3 at 12. Warden Hepp received this request on June 1, 2021. *Id.* On August 3, 2021, Hepp rejected the appeal as untimely because it was received after the 10-day deadline set in Wis. Admin. Code § DOC 310.10(10)). *Id.* at 6. Hepp also noted the issue was moot since Lindh was, by then, housed in single cell. *Id.*

Additionally, Lindh submitted a third complaint, received by the ICE office on May 24, 2021, given complaint number WCI-2021-7992. Dkt. No. 14-4. In his third complaint, Lindh states that he learned his "Single Cell Seniority" date was June 15, 2010, and he opined, "Clearly this is enough time to entitle me to a single cell and yet I remain doubled-up. Why?" Dkt. No. 25 at ¶12. On June 22, 2021, Moon rejected the complaint because it was moot as Lindh was in a single cell by then. *Id.* at ¶13. Lindh did not request review of the rejected complaint. *Id.*

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials

3

that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The Prison Litigation Reform Act, which applies to this case because Lindh was a prisoner when he filed his complaint, provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(1). According to the U.S. Supreme Court, exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Wisconsin inmates may use the inmate complaint review system to raise issues they have with staff actions. Wis. Admin. Code § DOC 310.06(1). Each inmate complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." *Id.* at §DOC 310.07(5)-(6). The Code is not specific about what information will be considered "sufficient" for the department to investigate a complaint. But the Seventh Circuit has explained that "[w]hen the applicable regulations provide little guidance regarding the required contents of a prisoner administrative complaint, . . . an inmate's

4

Case 1:21-cv-00801-WCG    Filed 02/25/22    Page 4 of 8    Document 28

complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (citations omitted). Thus, "a prisoner satisfies the exhaustion requirement when he gives a prison 'notice of, and opportunity to correct, a problem.'" *Id.* (citations omitted).

It is undisputed that Lindh never filed an inmate complaint alleging that Moon had retaliated against him by refusing to properly process and review his inmate complaints. Dkt. No. 25 at ¶14. Accordingly, Moon argues that Lindh has failed to exhaust his administrative remedies and the case must be dismissed. However, Lindh argues that he could not have filed a complaint against Moon because that staff misled him into believing it would have been rejected as outside the scope of the Inmate Complaint Review System (ICRS).

In support of his argument, Lindh refers to an inmate complaint that he filed regarding his phone privileges, WCI-2020-22014, that Moon denied as lacking merit or is otherwise frivolous. Dkt. No. 23 at 3; Dkt. No. 25 at 5–7. In the rejection letter, Moon also informed Lindh that she would send a captain a copy of the decision for reference. *Id.* In response, Lindh filed complaint WCI-2021-341 complaining that Moon committed a breach of confidentiality in her response to WCI-2020-22014 when she sent a copy to the captain. Dkt. No. 23 at 3; Dkt. No. 25 at 8. ICE M. Patten responded to WCI-2021-341 by stating,

> Inmate Lindh makes it clear that he is not satisfied with the decision he received regarding WCI-2020-22014. The complaint is exhausted through the ICRS. Inmate Lindh must also realize that a complaint that requests or would prompt redress or any new evaluation of the issues within any prior complaint, including the actions of the ICE who processed that prior complaint is merely an appellate action and would be contrary to DOC 310.09 and DOC 310.10.
>
> The issue raised in this complaint has been addressed through the inmate's prior use of the ICRS. Consequently, this complaint is rejected pursuant to DOC 310.10(6)(g), Wis. Adm. Code.

Dkt. No. 23 at 3; Dkt. No. 25 at 9. Lindh appealed the rejection and Warden Hepp affirmed that the complaint was properly rejected by the ICE in accordance with DOC 310.10(6). Dkt. No. 25

5

at 10–11.  Lindh argues that the response by ICE Patten misled him into thinking that complaints about an ICE's prior actions could not be the subject of a grievance.  Dkt. No. 23 at 5.  Accordingly, he argues that the grievance procedure was not available to him to file a complaint regarding Moon's retaliation against him by refusing to properly process and review his inmate complaints. *Id.*

Moon responds that the administrative remedies were available to Lindh because "inmates may submit complaints about an ICE only to the extent that the complaint is not an appeal of a prior ICE decision."  Dkt. No. 26 at 3.  Moon argues that the example Lindh provides is distinguishable from the claim he needed to exhaust because, unlike his example, his claim against Moon in this case is not an appeal of a prior complaint, or an issue previously addressed through the ICRS.  *Id.*  Instead, Lindh is alleging that Moon retaliated against him by refusing to properly process and review multiple inmate complaints, which would not have been an appeal of a prior complaint or about an issue previously addressed through the ICRS.  *Id.* Accordingly, because it is undisputed that Lindh never filed a complaint raising the retaliation claim against Moon at issue in this case, he has failed to exhaust his administrative remedies.  *Id.* at 3–4.

The Court agrees with Moon.  It is undisputed that Lindh never filed a complaint that Moon retaliated against him by refusing to properly process and review multiple inmate complaints, thus, he has failed to exhaust his administrative remedies.  Lindh's argument that he was misled about his ability to file a complaint against Moon and, therefore, his administrative remedies were not available is not persuasive.  A prisoner is not required to exhaust the administrative remedies if those remedies are not "available."  *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed "unavailable" when prison officials do not respond to a properly filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's

6

submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, 364 F. App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

Moon and other ICEs did not engage in the kind of conduct that is required to deem an administrative remedy unavailable. All of his complaints and appeals were responded to, and no one denied him any forms or utensils, or told him he could not file a complaint against Moon. Further, even if Lindh thought that filing a complaint against Moon for the retaliation claim at issue in this case would be denied or rejected, he was still required to do so, because there is no futility exception to exhaustion under the PLRA. *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006) ("Exhaustion is necessary even if . . . the prisoner believes that exhaustion is futile."). Accordingly, as it is undisputed that Lindh did not exhaust the available administrative remedies with regard to the claims against Moon, the case must be dismissed.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's motion for summary judgment on exhaustion grounds (Dkt. No. 11). Defendant's motion to stay (Dkt. No. 27) is **DENIED as moot**. This case is **DISMISSED without prejudice**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 25th day of February, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.